IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2006

## STATE OF TENNESSEE v. FRANK PEAKE, III

**Direct Appeal from the Criminal Court for Putnam County
No. 03-0820 Leon C. Burns, Jr., Judge**

_____

**No. M2005-01674-CCA-R3-CD - Filed April 11, 2006**

_____

The Defendant, Frank Peake, III, was convicted of aggravated assault, and the trial court sentenced him to prison for six years as a Range II offender. On appeal, the Defendant contends that: (1) the trial court erred when it allowed a witness to testify about a prior threat made by the Defendant; (2) the trial court erred by failing to provide a jury instruction on circumstantial evidence and failing to provide a limiting jury instruction as to the prior threat made by the Defendant; and (3) the evidence presented at trial is insufficient to support his conviction for aggravated assault. Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

H. Marshall Judd, Cookeville, Tennessee, for the Appellant, Frank Peake, III.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William E. Gibson, District Attorney General; and Anthony J. Craighead, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's conviction for aggravated assault pursuant to Tennessee Code Annotated section 39-13-102(a)(1)(B) (2003). At the Defendant's trial, the following evidence was submitted: Jeff Burchett testified that, on the night of the crime, he worked as a security doorman at a bar, Cotton Eyed Joe's. He explained that he asked the Defendant to leave the bar because the Defendant was arguing with a woman, and the Defendant was upset about this request. Burchett testified that Cotton Eyed Joe's had a policy against allowing people to argue in the bar. Burchett described how he got the Defendant to leave the bar and, once outside the bar, another incident involving a different group of people drew Burchett's attention away from the

Defendant. Burchett explained that he, another security guard, and the bar manager spent two to three minutes dealing with this group of people, and he was hit on the head by an individual in this group. Burchett explained that, next, two people came up to him and said that there was a problem in the parking lot. He said that he and Dale Fox, his supervisor, walked to the parking lot and saw the Defendant arguing with the Defendant's girlfriend. Burchett said that, as he approached the Defendant and his girlfriend, he could see their profiles. He explained that he saw the Defendant back up and reach behind his back with his right hand, and then the Defendant punched him and ran away. He recalled that the Defendant first hit him in the ear. He chased the Defendant until the Defendant hopped over a fence. Next, he turned around and saw two police officers who told him that he had a bad cut and was bleeding. Burchett recalled that, approximately thirty to thirty-five seconds after the Defendant hit him, he started to feel light headed and began staggering. He said that the police officers got him to the ground and started putting pressure on his neck. He testified that he was taken to the hospital by ambulance and received six stitches in his ear and twenty-seven stitches in his face. Burchett showed the scar which resulted from the incident to the jury. Burchett testified that he never put his hands on the Defendant.

On cross-examination, Burchett testified that he had worked at Cotton Eyed Joe's for fourteen months. He explained that, although he had been approved for security guard certification, he had not yet received the certification card. He acknowledged that fights were common at Cotton Eyed Joe's, and the bar has a sign at the door that prohibits guns and knives. Burchett explained that the security guards at Cotton Eyed Joe's do not pat down customers as they walk through the door, but if the guards see a customer with a knife, the guards ask the customer to take the knife out to the car. Burchett testified that he is six feet and three inches tall and that he weighs 300 pounds. He further testified that Dale Fox, a manager who is six feet tall and weighs two hundred and eighty pounds, accompanied him when he went to the parking lot to see the Defendant. He acknowledged that, when they first saw the Defendant in the parking lot, the Defendant's attention was focused on his girlfriend. He acknowledged that he did not see the Defendant cut him and did not see a knife in the Defendant's hand. He testified that the first time that he became aware of his cut was after he chased the Defendant.

William Randall Wofford testified that, on the night of the crime, he was working as a doorman at Cotton Eyed Joe's. He watched as the Defendant was escorted out of the bar and described the Defendant as "very threatening in demeanor." He further testified that, after being asked to leave, the Defendant remained outside in the patio area. Wofford told the Defendant that he had to leave the premises, and the Defendant responded that he had a knife and that he was going to cut Wofford. Wofford explained that the Defendant reached in his pockets as he threatened Wofford, but Wofford never saw the Defendant pull anything out of his pockets because the Defendant's girlfriend pulled the Defendant away.

On cross-examination, Wofford testified that he asks customers to lift their shirts or jackets as they enter Cotton Eyed Joe's and asks customers with knifes or clips to take those items back to their car. He further testified that he sometimes asks customers to empty their pockets if he suspects that a knife is inside their pockets. He said that he did not call the police after the Defendant

threatened him.

Officer Craig Wilkerson, a patrol officer with the Cookeville Police Department, testified that, on the night of the crime, he arrived at Cotton Eyed Joe's to address an unrelated incident, when he saw the Defendant running. Officer Wilkerson described how, when Burchett and Fox walked away from the Defendant and towards the police officers, he saw that Burchett had a cut with blood gushing out of it. Officer Wilkerson immediately notified Dispatch to get an ambulance to Cotton Eyed Joe's because Burchett had suffered a severe laceration, and Officer Wilkerson was concerned that the victim "may not make it." He said that Officer Lense and Officer Johnson chased the Defendant and that some police officers searched the area but could not find a weapon.

On cross-examination, Officer Wilkerson testified that the manager of Cotton Eyed Joe's alerted him to the altercation involving the Defendant in the parking lot. He acknowledged that he first saw Burchett after Burchett had run after the Defendant, and the blood from the victim's cut may have started to spurt because Burchett had been running.

Officer Jeff Johnson testified that he is a canine officer with the Cookeville City Police Department. He testified that, when he arrived at the crime scene, he saw two security officers standing with the Defendant and saw the Defendant hit Burchett and then run away and jump over a fence. The Officer said that he ran parallel to where the Defendant had jumped the fence in pursuit of the Defendant. He said that he saw another police officer who ran down the streets parallel to where the Defendant had climbed the fence. He explained that he ran past Burchett, and, as he was doing so, Officer Wilkerson said that Burchett had been cut. Officer Johnson explained that, next, he received notice from Lieutenant Webb that Lieutenant Webb had found the Defendant, and he went to Lieutenant Webb's location and saw the Defendant on the ground. Officer Johnson then retrieved his canine and searched the surrounding area for approximately one hour but did not find a weapon. On cross examination, he explained that he could not search areas that were inaccessible to dogs such as roof tops.

Lieutenant Mark Webb testified that he is a supervisor on third shift for the Cookeville Police Department. He explained that, on the night of the crime, he received a call about the situation at Cotton Eyed Joe's that described the incident involving the Defendant, the Defendant's physical description, and the direction in which the Defendant was heading. He drove towards that area and turned the lights out in his vehicle, and he saw an individual who fit the Defendant's description. He turned on the vehicle's lights, got out of the vehicle, told the Defendant to stop, and the Defendant got down on the ground. He said that he searched the area where the Defendant was arrested for a weapon.

On cross-examination, Lieutenant Webb testified that the Defendant had blood on his clothing. He acknowledged that an officer searched the Defendant and did not find a weapon, but he did not recall discussing a knife with the Defendant.

Tamera Verble testified that, on the night of the crime, she saw the Defendant at Cotton Eyed

-3-

Joe's and got angry because he was talking to another woman. She said that she pulled him up to the front of the club and began arguing with him. She acknowledged that she and the Defendant were told to leave the club. She said that, once outside the club, a different group of people got into a fight with each other. She explained that the police came when the fight broke out, and she and the Defendant went to the parking lot where they continued to argue. Verble said that she saw two security officers approach them, but the Defendant did not see them because he was not facing the parking lot. She said that the security guards approached the Defendant, that the Defendant tried to pull away from the officers, and that the security guards went running after the Defendant.

On cross examination, Verble testified that, on the night of the crime, she was dating the Defendant and that he is the father of her daughter. She said that she got a ride to Cotton Eyed Joe's with the Defendant's wife's cousin, and the Defendant got a ride to Cotton Eyed Joe's with someone else. She explained that she and the Defendant were not arguing loudly when they were asked to leave Cotton Eyed Joe's. She said that they could not leave the premises because they did not have a car. She further testified that she was with the Defendant the whole time, and she did not see the Defendant argue with Wofford. She explained that they never tried to go back into Cotton Eyed Joe's after they were first told to leave because a fight erupted outside the bar. She explained that she and the Defendant decided to go to the parking lot. She said that she only saw the Defendant swing at Burchett in an attempt to get away and that she did not see the Defendant swing at Burchett in order to actually hit him.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it allowed a witness to testify about a prior threat made by the Defendant; (2) the trial court erred by failing to provide a jury instruction on circumstantial evidence and by failing to provide a limiting jury instruction as to the prior threat made by the Defendant; and (3) the evidence presented at trial is insufficient to support his conviction for aggravated assault.

### A. Testimony of Wofford Concerning the Prior Threat Made by the Defendant

The Defendant alleges that the trial court erred when it allowed Wofford to testify that the Defendant told him that the Defendant had a knife and would "cut" him. The Defendant first argues that the statement was irrelevant and is therefore inadmissible. He further argues that, even if Wofford's testimony had some relevance, the testimony is clearly prejudicial. The Defendant also contends that Wofford's testimony is inadmissable under Tennessee Rule of Evidence 404(b), which prohibits the admission of evidence of other crimes, wrongs, or acts to show that the accused's action is in conformity with a character trait. The State contends that Wofford's testimony was relevant and properly admitted because it addressed issues regarding the Defendant's identity and possession of a knife, and thus it did not violate Tennessee Rule of Evidence 404(b). The trial court found that Wofford's testimony was probative to prove that the Defendant had a knife and that this probative value outweighed any prejudicial impact of his testimony.

In Tennessee, admissibility of evidence is generally within the sound discretion of the trial judge. State v. Saylor, 117 S.W.3d 239, 247 (Tenn. 2003). Initial questions of admissibility of evidence are governed by Tennessee Rules of Evidence 401 and 403. These rules require that the trial court must first determine whether the proffered evidence is relevant. Pursuant to Rule 401, evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). In other words, "evidence is relevant if it helps the trier of fact resolve an issue of fact." Neil P. Cohen, et al., Tennessee Law of Evidence § 4.01[4], at 4-8 (4th ed. 2000). Tennessee Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible except as [otherwise] provided . . . . Evidence which is not relevant is not admissible." However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. It is within the trial court's discretion to determine whether the proffered evidence is relevant; thus, we will not overturn the trial court's decision absent an abuse of discretion. See Forbes, 918 S.W.2d at 449.

In our view, the trial court did not abuse its discretion when it determined that Wofford's testimony was relevant and that the probative value of his testimony was not substantially outweighed by the danger of unfair prejudice. Wofford's testimony is relevant because it addresses issues regarding the Defendant's presence at the scene of the crime with a knife. Therefore, Wofford's testimony is relevant and has substantial probative value. This evidence is certainly prejudicial to the Defendant. However, any evidence that is relevant to show guilt is prejudicial. We cannot conclude that the trial court abused its discretion when it found that any potential prejudicial impact of Wofford's testimony does not outweigh its probative value. Thus, Wofford's testimony was admissible as relevant substantive evidence under Tennessee Rules of Evidence 401 and 402. Further, his testimony is not excludable under rule 403 because the probative value was not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

Next, the Defendant contends that Wofford's testimony is inadmissable under Tennessee Rule of Evidence 404(b), which prohibits the admission of evidence of other crimes, wrongs, or acts to show that the accused's action is in conformity with a character trait. The State counters that Wofford's testimony was not prejudicial and was highly probative of the Defendant's identity and possession of a knife. The trial court stated:

> Well, the victim in the case identified the [D]efendant as the person who struck him, and then he later determined that he had - - or found out that he had been cut, obviously by some weapon other than a cut that might have come from a fist, or that type of cut. No weapon was recovered from the [D]efendant or in the area, but this would be probative, in the Court's opinion, to prove that he had a knife. Circumstances are such that he had one when he hit the victim in the case. And its

probative value far exceeds any prejudicial impact, so I'd overrule the objection that he testify.

Pursuant to Tennessee Rule of Evidence 404(b):

Other Crimes, Wrongs, or Acts. – Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b); see also State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985). "A fourth prerequisite to admission is that the court find by clear and convincing evidence that the defendant committed the other crime." State v. Thacker, 164 S.W.3d 208, 240 (Tenn. 2005). A trial court's decision regarding the admission of Rule 404(b) evidence will be reviewed under an abuse of discretion standard; however, "the decision of the trial court should be afforded no deference unless there has been substantial compliance with the procedural requirements of the Rule." State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

Generally, only in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. State v. McCary, 922 S.W.2d 511, 513 (Tenn. 1996). In making its decision regarding the admissibility of the testimony, the trial court must first determine if the offered testimony is relevant to prove something other than the Defendant's character. Id. at 514. The risk is greater when the defendant's prior bad acts are similar to the crime for which the defendant is on trial. Id. Nevertheless, evidence of a defendant's prior crimes, wrongs or acts may be admissible where it is probative of material issues other than conduct conforming with a character trait. Tenn. R. Evid. 404(b). Such material issues include "identity (including motive and common scheme or plan), intent, or rebuttal of accident or mistake." Tenn R. Evid. 404, Advisory Comm'n Comments.

Unlike Federal Rule of Evidence 404(b), which generally bars evidence of other crimes, wrongs, or acts, the corresponding rule in Tennessee does not specifically enumerate the purposes for which such evidence may be offered. The issues to which evidence of other acts may be relevant were not listed by the Advisory Commission so that lawyers and judges would "use care in identifying the issues to be addressed by the Rule 404(b) evidence." Neil P. Cohen, et al., Tennessee Law of Evidence § 404.6, at 169 n.457 (4th ed. 2000). Therefore, in every case in which evidence of other crimes, wrongs, or acts is offered, the trial judge should carefully scrutinize the relevance of the evidence and the reasons for which it is being offered.

In the case currently before us, the trial court did not abuse its discretion when it admitted Wofford's testimony. First, we note that Wofford's testimony about the Defendant's statement, although hearsay,[1] is admissible as an admission by a party opponent pursuant to Tennessee Rule of Evidence 803, which permits the admission of an out of court statement offered against the party that is the party's own statement. See Tenn. R. Evid. 803(1.2). The trial court determined that a material issue existed other than conduct conforming with a character trait and determined that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Although the trial court did not specifically find by clear and convincing evidence that the incident described by Wofford had occurred, the trial court did find that the circumstances of the case indicated that the Defendant probably had a knife when he hit Burchett. When, as in this case, a trial court substantially complies with the procedural requirements of the rule, its determination will not be overturned absent an abuse of discretion. Dubose, 953 S.W.2d at 652. Because the trial court substantially complied with the requirement of 404(b), this Court will review the trial court's determination for an abuse of discretion.

Wofford's testimony was presented to show that the Defendant had possession of a knife on the night of the crime, not to show that the Defendant assaulted Burchett because he had previously threatened Wofford. Therefore, the evidence was highly probative. There was considerable evidence that the Defendant cut Burchett with a knife. The fact that the State did not find the knife and introduce it into evidence increases the probative value of Wofford's testimony. See State v. Electroplating, Inc., 990 S.W.2d 211, 224 (Tenn. Crim. App. 1998). The Defendant denied that he was responsible for Burchett's neck injury. Therefore, as alleged in the indictment, it was incumbent on the State to prove that the Defendant caused bodily injury to Burchett while utilizing a knife. Furthermore, the risk that the jury would convict the Defendant for assaulting Burchett based upon his bad character due to Wofford's testimony is slight, since Wofford's testimony focused on the Defendant's possession of a knife. Thus, Wofford's testimony was highly probative, and the probative value was not outweighed by the danger of unfair prejudice. We therefore conclude that the trial court did not abuse its discretion in admitting Wofford's testimony. The Defendant is not entitled to relief on this issue.

## B. Sufficiency of the Evidence

The Defendant alleges that there is insufficient evidence in the record to support his conviction for aggravated assault. Specifically, the Defendant contends that his conviction is based on insufficient circumstantial evidence because the record is void of any evidence that the Defendant actually possessed a knife that he used to cut Burchett, no testimony was elicited from any witness that Burchett had not been cut prior this encounter with the Defendant, and Burchett was unaware that he had been cut prior to being told so by the police officers. The State counters that the record provides sufficient evidence to support the Defendant's conviction.

---

[1] Hearsay is an out-of-court statement offered in court "to prove the truth of the matter asserted." Tenn. R. Evid. 801(c).

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass,13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Caroll v. State, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000). However, before an accused can be convicted of a criminal offense based on circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant . . . ." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971). "In other words, a web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. at 613. We note that it is well-established law in Tennessee that the testimony of a victim, standing alone, is sufficient to support a conviction. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981).

A person commits aggravated assault who "[i]ntentionally or knowingly commits an assault

as defined in § 39-13-101[(a)(1) (2003)], and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1) (2003); <u>see</u> Tenn. Code Ann. § 39-13-101(a)(1) (defining assault as "[i]ntentionally, knowingly or recklessly causes bodily injury to another."). In the case under submission, we conclude that the evidence was sufficient to support the jury's verdict. Burchett saw the Defendant reach behind the Defendant's back just before Burchett felt the Defendant hit Burchett in the ear. About thirty to thirty-five seconds later, police saw Burchett with a cut which had blood spurting out of it. Burchett's injury was so severe that he was taken to a hospital where he received six stitches in his ear and twenty seven stitches in his face. Additionally, Officer Johnson testified that he saw the Defendant hit Burchett, and Wofford testified that the Defendant told him that the Defendant had a knife. The jury was entitled to accredit the testimony of Wofford and Officer Johnson. Officer Johnson's testimony indicated that the knife could have been thrown on top of a roof where the police officers were not able to search, and the State is not required to provide the knife to sustain this conviction. The testimony of Burchett, Officer Johnson, and Wofford, along with the evidence regarding the seriousness of Burchett's injury, sufficiently supports the Defendant's conviction. From a review of all the evidence, a jury could reasonably conclude that the Defendant committed the offense of aggravated assault. Therefore, the Defendant is not entitled to relief on this issue.

## C. Jury Instructions

The Defendant contends that the trial court committed reversible error when it failed to provide the jury with an instruction about how to weigh circumstantial evidence and a limiting instruction regarding Wofford's testimony concerning the prior threat made by the Defendant. The Defendant did not request such instructions at his trial.

## 1. Instruction for Circumstantial Evidence

The Defendant contends that the trial court committed reversible error by failing to provide the jury with instructions on weighing circumstantial evidence. Specifically, the Defendant alleges that his case required a jury instruction on circumstantial evidence because there was no direct proof that the Defendant had a knife and used it to cut Burchett. The general principle in criminal cases is that the trial judge has a duty to give a complete charge of the law applicable to the facts of the case, and the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge. <u>Poe v. State</u>, 370 S.W.2d 488, 489 (1963). When all the incriminating evidence against the accused in a criminal trial is circumstantial, the failure of the judge to instruct the jury on the law of circumstantial evidence, whether or not the respondent requests such instructions, is fundamental reversible error. <u>State v. Thompson</u>, 519 S.W.2d 789, 792 (Tenn. 1975). But, if the evidence against the defendant is both direct and circumstantial, the trial judge must instruct the law for weighing circumstantial evidence, if requested, but, does not commit reversible error by failing to so instruct if not requested to do so. <u>Id.</u>

The Defendant cites <u>Thompson</u> as support for his position that the trial court committed

reversible error when it failed to provide the jury with an instruction defining circumstantial evidence. However, Thompson is distinguishable from this case in that it holds that only when all the incriminating evidence against a defendant is circumstantial, the failure of the judge to instruct the jury on circumstantial evidence is fundamental reversible error whether or not the Defendant requests such an instruction. Id. Direct evidence is evidence which, if believed, proves the existence of a fact in issue without inference or presumption. Id. at 972-93. We are of the opinion that much of the material incriminating evidence in this case is direct evidence. For instance, we regard Burchett's testimony that the Defendant hit him in the ear and Officer Johnson's testimony that he saw the Defendant hit Burchett as direct evidence. Similarly, the record provided direct evidence that Burchett suffered serious bodily injury that required a total of thirty-three stitches in the area where he testified that the Defendant hit him. Furthermore, Wofford testified that the Defendant said that he had a knife. Just because the jury was required to draw an inference from facts established by direct evidence in order to reach the ultimate conclusion, does not mean that this was "a case based wholly on circumstantial evidence." State v. Robert Leon Curtis, No.1, 1987 WL 26370, at *2 (Tenn. Crim. App., at Jackson, Dec. 9, 1987) *perm. app. granted on other grounds* (Tenn. April 4, 1988) (citing Thompson, 519 S.W.2d at 792); see also State v. Keen, No. 02C01-9709-CR-00365, 1999 WL 61058, at *11 (Tenn. Crim. App., at Jackson, Feb. 10, 1999). Therefore, the trial court did not commit reversible error when it did not provide the jury with an instruction about how to weigh circumstantial evidence, and the Defendant is not entitled to relief on this issue.

## 2. Limiting Instruction for Wofford's Testimony Concerning the Prior Threat Made by the Defendant

Next, the Defendant contends that the trial court erred by failing to provide the jury with a limiting instruction regarding Wofford's testimony that the Defendant told him that the Defendant had a knife and would "cut him." Specifically, he alleges the trial court should have instructed the jury to only consider Wofford's testimony for permissible purposes and should have explained that Wofford's testimony should not be used to conclude that the Defendant assaulted Burchett because he earlier threatened Wofford. He further asserts that the failure to give a limiting instruction increased the prejudicial effect of the evidence, and established the Defendant's propensity and disposition to commit the crime. Under Rule 105, Tennessee Rules of Evidence, the Defendant would have been entitled to a jury instruction limiting the use of Wofford's testimony for its permissible purpose had he requested such an instruction.[2] Having failed to do so, he cannot now complain that the trial court erred by failing to give the instruction. Tenn. R. App. P. 36(a). Therefore, the Defendant is not entitled to relief on this issue.

---

[2] Under Rule 105, "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." Tenn. R. Evid. 105.

## III.  Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE